UNITED STATES of America,
Plaintiff-Appellee,

v.

Dennis KAUN, Defendant-Appellant.

No. 86–1926.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 20, 1987.

Decided Aug. 26, 1987.

Rehearing and Rehearing En Banc
Denied Oct. 21, 1987.

Dennis Kaun, Elm Grove, Wis., for defendant-appellant.

John Dudeck, Jr., Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before FLAUM and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

Dennis Kaun, a tax protester, appeals from the district court's entry of a permanent injunction against him pursuant to sections 7402(a) and 7408 of the Internal Revenue Code. Among other things, the injunction prohibits Kaun from inciting others to submit tax returns based on certain false and fraudulent income tax theories, and from advertising or marketing materials based on these theories under the guise of tax advice. Kaun argues that the district court had no statutory authority to enter an injunction against him. He also argues that the injunction is void because it is based on clearly erroneous findings of fact, because it impermissibly restricts his freedom of speech and freedom of expression, and because it is vague and overbroad. We reject these claims, and affirm the judgment of the district court.

I.

Because the district court's opinion in this case is reported, see *United States v. Kaun*, 633 F.Supp. 406 (E.D.Wis.1986), we set forth only those facts necessary to an understanding of the issues on appeal.

Kaun is the unofficial leader of a tax protester group known as the Wisconsin Society for Educated Citizens ("WSEC"). The WSEC is formally affiliated with the American Society for Educated Citizens, and informally affiliated with a number of similar groups across the country.

In early 1984, Special Agents Thomas Walkner and Lynn Griffin of the Internal Revenue Service, posing as husband and wife, became members of the WSEC and attended about 14 meetings. At that time, the WSEC held weekly two and a half hour meetings in Elm Grove, Wisconsin, with a usual attendance of 60 to 75 people. New members were encouraged to join the "constitutional class," which involved listening to as much as 90 hours of presentations

and cassette tapes on issues of constitutional law. Regular members discussed topics such as the First Amendment, the Freedom of Information Act, driver's licenses, and land patents.

The most popular topic of discussion among the regular WSEC membership, however, was the corruption of the internal revenue system, and the ways in which taxpayers could obstruct the workings of the Internal Revenue Service. For example, according to the trial testimony of Agents Walkner and Griffin, Kaun encouraged WSEC members to send the IRS as many Freedom of Information Act requests as possible, in order to "bog down" the IRS. Kaun also discussed requesting injunctions against employers to prevent them from requiring their employees to fill out W-4 forms. Agent Walkner testified that the WSEC sponsored a videotape presentation on the subject of filing common law liens against IRS personnel, and that he knew of at least three WSEC members who subsequently filed such liens.

As a result of information gained through the IRS agents' infiltration, on May 23, 1984, the United States filed suit in federal district court, requesting injunctive relief against Kaun because he was the promoter of an "abusive tax shelter," and because Kaun was impeding the enforcement of the internal revenue laws. The district court granted the government's motions for an expedited hearing, and for consolidation of the expedited hearing and the trial on the merits.

At trial, the main evidence against Kaun was the direct testimony of Special Agents Walkner and Griffin; tape recordings of WSEC meetings made by the agents; forms printed on the WSEC word processor; and various pamphlets and information kits that were offered for sale at each meeting. Kaun, who represented himself at the trial, argued that the government had insufficient evidence of any misconduct on his part.

On April 9, 1986, the district court entered a permanent injunction against Dennis Kaun pursuant to § 7402(a) and § 7408 of the Internal Revenue Code, 26 U.S.C. § 7402(a) (1982) and 26 U.S.C. § 7408 (1982 & Supp.1985). Under the injunction, Kaun may not, among other things, encourage others to file returns based on certain false and fraudulent theories about the tax system, or advertise or sell materials based on these theories under the guise of tax advice.[1] Kaun filed a timely notice of appeal.

---

1. The district court's order read in part:

The defendant, Dennis Kaun, individually and doing business as the Wisconsin Society for Educated Citizens, his agents, servants, employees, attorneys, and all those in active concert or participation with them, are hereby ENJOINED, directly and indirectly from engaging or undertaking to engage in any and all of the following activities:

1. Organizing, selling, or assisting in the organization of an entity or otherwise promoting any plan or arrangement based upon (a) the false representation that wages, salaries, or other compensation for labor or services are exempt from federal income taxation, or (b) any other such frivolous claim with respect to the scope of federal income taxation, or (c) any false or fraudulent claim regarding the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit for federal income tax purposes;

2. Advertising, marketing, or selling any documents or other information advising taxpayers that wages, salaries, or other income not specifically excluded from taxation under Title 26 of the United States Code are not taxable income;

3. Providing forms for or assisting any individual in the preparation of false Internal Revenue Forms W-4, W4E, 1040X, and any other form, return, or declaration claiming that the taxpayer is exempt from federal income taxation or entitled to excessive withholding allowances;

4. Filing, providing forms for, or otherwise aiding and abetting the filing of Freedom of Information requests with the Internal Revenue Service;

5. Filing, providing forms for, or otherwise engaging in aiding and abetting the institution or prosecution of any civil action in any court in the United States of America based upon (a) the claim that wages or salaries or other compensation for labor or services are not subject to federal income tax, or (b) any other such frivolous claim with respect to federal income taxation; and

6. Engaging in any other conduct subject to penalty under Section 6700 of the Internal Revenue Code, Title 26 of the United States Code.

*United States v. Kaun,* 633 F.Supp. at 418–19. This injunction is almost identical to the injunction upheld in *United States v. White,* 769 F.2d 511, 513–14 n. 2 (8th Cir.1985).

## II.

On appeal, Kaun, still representing himself, raises a great many issues, some frivolous and some of substance. Bearing in mind our duty to hold pleadings drafted by persons untrained in the law to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam), we read his appeal to involve three major claims. First, Kaun argues that the district court had no authority under either I.R.C. § 7402(a) or § 7408 to enter an injunction against him. Second, Kaun argues that even if the district court had statutory authority to grant an injunction, this injunction is void because it was based on clearly erroneous factual findings. Finally, Kaun argues that the injunction intolerably burdens his First Amendment rights to freedom of expression and freedom of association, and is impermissibly vague and overbroad. We reject these claims, and affirm the judgment of the district court.

## III.

Kaun first argues that the injunction is void because the court had no statutory authority to proscribe his conduct. The district court based its injunction against Kaun on two statutes: I.R.C. § 7408 and, in the alternative, I.R.C. § 7402(a). We conclude that the injunction against Kaun was proper under § 7408. We therefore need not consider whether the district court's action was also proper under § 7402(a), which authorizes a district court, at the request of the United States, to issue such injunctions and other judgments and decrees "as may be necessary or appropriate for the enforcement of the internal revenue laws," I.R.C. § 7402(a) (1982).

Section 7408 authorizes the United States to seek injunctive relief against persons found to be in violation of I.R.C. § 6700. Thus, the injunction against Kaun was properly based on § 7408 if Kaun's activities fell within the scope of § 6700.

Sections 6700 and 7408 of the Internal Revenue Code were added to the Code by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324. Section 6700, titled "Promoting abusive tax shelters," contains two elements that the government must prove: (1) that the defendant was involved in an abusive tax shelter, and (2) that the defendant made statements about the tax benefits investors would receive if they participated in the shelter which the defendant knew or had reason to know were false or fraudulent.[2] We conclude that Kaun's tax protest activities fell within the scope of § 6700.

TEFRA defines an abusive tax shelter as a partnership or other entity, any investment plan or arrangement, or any other plan or arrangement, whose "principal purpose ... is the avoidance or evasion of federal income tax." I.R.C. § 6661(b)(2)(C)(ii) (1982 & Supp.1985). The government argues that under this broad definition the WSEC can be considered a tax avoidance scheme within the meaning of § 6700, and that Kaun is therefore liable as a promoter of the scheme.

---

2. Section 6700 reads in pertinent part:

(a) IMPOSITION OF PENALTY

Any person who—

(1)(A) organizes (or assists in the organization of)—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter,

shall pay a penalty equal to the greater of $1,000 or 20 percent of the gross income derived or to be derived by such person from such activity. I.R.C. § 6700 (1982 & Supp. 1985).

Section 6703(a) of the Code provides that "[i]n any proceeding involving the issue of whether or not any person is liable for a penalty under section 6700, ... the burden of proof with respect to such issue shall be on the Secretary." I.R.C. § 6703(a) (1982).

Congress may have envisioned a different strategy for enforcing the revenue laws against tax protesters. At the same time that Congress enacted § 6700, it enacted § 6702, which provides a penalty for "frivolous returns." The legislative history of § 6702 indicates that Congress was concerned with "the rapid growth in deliberate defiance of the tax laws by tax protestors," S.Rep. No. 97–494, 97th Cong., 2d Sess. 277, *reprinted in* 1982 U.S.Code Cong. & Admin.News 781, 1023, and that Congress knew that "[m]any of these protestors [were] induced to file protest returns through the criminal conduct of others," *id.* at 1024. The simultaneous enactment of these two new provisions might indicate that Congress conceived of tax shelters and tax protester groups as two separate problems, and intended that they be addressed in different ways. This distinction, moreover, is supported by the case law. We have found only one other case in which § 6700 was used to prosecute a tax protester: *United States v. White*, 769 F.2d 511 (8th Cir.1985). In contrast, there have been hundreds of proceedings against tax protesters and their aiders and abetters brought under § 6702. *See, e.g., Coleman v. C.I.R.*, 791 F.2d 68 (7th Cir.1986) (collecting cases).

However, under the broad language of § 6700, there is nothing to prevent a tax protest group from qualifying as an "abusive tax shelter." It is a familiar rule of statutory construction that, in the absence of clear legislative intent to the contrary, the language of a statute determines its meaning. *See Consumer Product Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The words "any other plan or arrangement" are clearly broad enough to include a tax protester group. Moreover, the fact that Congress designed § 6702 to reach tax protesters does not mean that § 6702 was intended to be the exclusive remedy against tax protester conduct. In the absence of compelling evidence that § 6700 was not intended to apply to tax protesters, we conclude that a tax protester group may constitute an abusive tax shelter for purposes of § 6700. *See White*, 769 F.2d at 515. The district court, therefore, had authority under § 7408 to grant an injunction against Kaun.

## IV.

The next question is our standard for reviewing injunctions issued under § 7408. "In an action for a statutory injunction, once a violation has been demonstrated, the moving party need only show that there is a reasonable likelihood of future violations in order to obtain relief." *S.E.C. v. Holschuh*, 694 F.2d 130, 144 (7th Cir.1982) (footnote omitted). Our review of a district court's decision to grant a permanent injunction " 'is limited to the determination of whether the district court abused its discretion in deciding that the circumstances of the case justified injunctive relief.' " *Prohosky v. Prudential Ins. Co.*, 767 F.2d 387, 391 (7th Cir.1985) (*quoting Federal S & L Ins. Corp. v. PSL Realty Co.*, 630 F.2d 515, 520 (7th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981)).

When we review the grant or denial of a preliminary or permanent injunction, as in any other case, "the factual determinations are reviewed under a clearly erroneous standard and the necessary legal conclusions are given *de novo* review," *Lawson Products v. Avnet, Inc.*, 782 F.2d 1429, 1437 (7th Cir.1986). A factual or legal error may be sufficient to establish an abuse of discretion. *Id.; see generally Darryl H. v. Coler*, 801 F.2d 893, 898 (7th Cir.1986) (discussing the meaning of "abuse of discretion" in the context of a preliminary injunction). Thus, we must overturn the injunction against Kaun if we find that the trial court made factual or legal errors amounting to an abuse of discretion when it found, first, that Kaun violated § 6700 and, second, that he was reasonably likely to do so again. We find no abuse of discretion in this case.

### A.

The first part of our inquiry is whether the district court's finding that Kaun had violated § 6700 was an abuse of discretion. We conclude that it was not.

■ Under § 6700, the government must prove that the defendant was involved in an "abusive tax shelter": that is, any entity whose principal purpose is the avoidance or evasion of federal income tax. In this case, the district court accepted as credible the testimony of Special Agent Griffin, who stated, "I think the main purpose [of the WSEC] is to try to circumvent Internal Revenue Service laws, try to stop filing tax returns, try to stop filing W–4's, trying to file 1040X forms in order to claim all past income taxes and social security taxes paid in." *Kaun*, 633 F.Supp. at 414. We must defer to a trial court's judgment of the credibility of witnesses. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Although Kaun denied that evasion of taxes was the purpose of his organization, the trial court was entitled to conclude that his testimony was self-serving and not credible. The district court's finding as to the principal purpose of the WSEC is therefore not clearly erroneous. In addition, it was undisputed at trial that in 1984 Kaun was a central figure in promoting and organizing the activities of the WSEC. Thus, the district court's finding that Kaun was involved in an abusive tax shelter within the meaning of § 6700 was not an abuse of discretion.

The government must also prove under § 6700 that Kaun made statements relating to tax benefits available through the WSEC that he knew or had reason to know were false or fraudulent. Kaun argues that the district court erred in finding that the goverment proved this element of § 6700. To support this contention, Kaun contends that the district court erroneously attributed to him ideas expressed in a pamphlet called "Patriot's Pursuit of Happiness," by George Arlen. This document, written by a member of the American Society for Educated Citizens, contains numerous sample letters to IRS officials and others based on the theory that wages are not income, and that the words "wages," "income," "employee," and "employment," as used by the IRS, are all legal fictions. Kaun points out that he never personally endorsed the "Patriot's Pursuit of Happiness," nor did he tell anyone that the statements contained in it were true. Kaun further alleges that the only connection between him and this pamphlet was the fact that the pamphlet was offered for sale at WSEC meetings, along with a plethora of other pamphlets, tapes, and similar material. Indeed, as the district court noted, "there is no evidence in the record to suggest that the defendant himself peddled these materials among his group's membership," *Kaun*, 633 F.Supp. at 416.

■ However, the sale of this pamphlet and other, similar materials was not the only evidence that the government produced at trial to show that Kaun made knowingly false and fraudulent statements. Kaun is an accountant, and his trial testimony demonstrated his knowledge of the tax system and his familiarity with the IRS's view of his theories. Yet Kaun testified that he believes that labor is not taxable because it is personal property, and that he has tried to persuade others of this belief. There was also evidence that Kaun encouraged WSEC members to file returns based on tax positions he knew or should have known to be false, and that as a result the IRS received a flood of false and fraudulent tax returns. On this record, the district court's conclusion that the government proved the second element of § 6700 was correct.

We conclude that the trial court did not abuse its discretion in holding that Kaun was a promoter of an abusive tax shelter within the meaning of § 6700.

**B.**

The second part of our inquiry is whether the district court abused its discretion in finding that Kaun was likely to violate the law again. We find no abuse of discretion on these facts.

In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violation, including such factors as the gravity of harm caused by the offense; the extent of the defendant's participation and his degree of scienter; the isolated or recurrent nature of the infraction and the likelihood that

**1150**

the defendant's customary business activities might again involve him in such transaction; the defendant's recognition of his own culpability; and the sincerity of his assurances against future violations.

*S.E.C. v. Holschuh,* 694 F.2d 130, 144 (7th Cir.1982).

■ In this case, the district court found that Kaun's activities as leader of the WSEC had already caused extensive tax revenue losses, *Kaun,* 633 F.Supp. at 417, and that Kaun clearly knew that his teachings were fraudulent, *id.* at 418. The court concluded, "[T]here is no evidence whatsoever that, if not prevented from pursuing this troublesome agenda further, [Kaun and his followers] will stop on their own initiative. Indeed, all indications are that they will continue their harassing and destructive activities unless enjoined now." *Id.* Further, the record shows that Kaun has steadfastly maintained his total lack of culpability, and has provided no assurances that he will change his behavior in the future. On these facts, the district court did not abuse its discretion in finding that Kaun was reasonably likely to violate § 6700 again. Because the district court did not abuse its discretion in finding that Kaun had violated § 6700 and was likely to do so again the injunction against Kaun under § 7408 was proper.

## V.

The most troubling question in this case is whether the district court's injunction impermissibly infringes on Kaun's First Amendment rights to freedom of expression and freedom of association. We find that, if the injunctive order is read narrowly, there is no such violation.

Kaun's first point is that the order against him constitutes a prior restraint, and as such is presumptively invalid. "Governmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated." *In re G. & A. Books, Inc.,* 770 F.2d 288, 296 (2d Cir.1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986); *see also Bernard v. Gulf Oil Co.,* 619 F.2d 459, 468 (5th Cir. 1980), *aff'd,* 452 U.S. 89, 101 S.Ct. 2193, 68

L.Ed.2d 693 (1981) ("The essence of prior restraint is that it places specific communications under the personal censorship of the judge."); *Chicago Council of Lawyers v. Bauer,* 522 F.2d 242, 248 (7th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976) (A prior restraint is "a predetermined judicial prohibition restraining specified expression.").

We agree that the injunction against Kaun is a prior restraint. The order forbids him to communicate certain ideas, and subjects Kaun to contempt if he violates the order. Kaun is also correct that "[a]ny prior restraint on expression [carries] a 'heavy presumption' against its constitutional validity," *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1 (1971). Nevertheless, not every prior restraint is unconstitutional *per se. See Near v. Minnesota,* 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 (1931). As we read the injunction against Kaun, the injunctive order does not impermissibly infringe upon Kaun's freedom of expression and freedom of association, because it restrains only unprotected speech. *See United States v. White,* 769 F.2d 511, 517 (8th Cir.1985).

### A.

The first paragraph of the injunction prohibits Kaun from "organizing, selling, or assisting in the organization of an entity or otherwise promoting any plan or arrangement" based on various false and fraudulent claims about income taxation. Because the district court issued its injunction against Kaun on the theory that the WSEC itself was an abusive tax shelter within the meaning of § 6700, the first paragraph of the injunction, read broadly, could be understood to prohibit Kaun from any participation in the WSEC. Moreover, the district court's opinion supports this interpretation. "The real threat [the WSEC members] pose ... to the proper functioning of the Internal Revenue Service springs from their attempts to proselytize other, uneducated citizens in the ways of their association ... through the discussion meetings

described at some length above." *Kaun*, 633 F.Supp. at 414–15.

This reading of the injunction, however, would raise serious constitutional problems. Although the district court found that, for the purposes of I.R.C. § 6700, the principal mission of the WSEC was the avoidance of income taxes, tax evasion was clearly not the organization's only goal. For example, Special Agent Griffin testified that in her opinion a major purpose of the WSEC was to educate its members about the history of the Constitution and about constitutional law. The record also shows that WSEC members consider themselves to be political agitators. For example, according to the WSEC's declaration of purpose, its members believe that:

> officials, agents, and advisors of government have knowingly acted and conspired to create pretended titles of nobility, to plunder and steal, to create massive inflation, to enslave the people, to buy patronage with the loot, to compromise the country's defenses, to create international entanglements, and to jail ... political objectors and loyal protestors.

Defendant's Exhibit 2 ("WSEC Declaration of Purpose"). To this extent, the WSEC is a political group that advocates violation of the internal revenue laws as one of its tactics.

Kaun's presentations to the WSEC membership about the Internal Revenue Service, therefore, constitute political speech—speech that lies at the heart of the First Amendment. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575, 100 S.Ct. 2814, 2826, 65 L.Ed.2d 973 (1980) (plurality). Government restriction on such speech must comply with *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). *Brandenburg* held that "the constitutional guarantees of free speech and free press do not permit a State

to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." [3] *Id.* at 447, 89 S.Ct. at 1829. Thus, if paragraph (1) of the injunction against Kaun is read broadly to prohibit Kaun's participation in any WSEC activities, the injunctive order might well violate Kaun's right to freedom of expression.

If the first paragraph of the injunction were read broadly, Kaun's right to freedom of association might also be infringed. "[T]he Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 618, 104 S.Ct. 3244, 3249, 82 L.Ed.2d 462 (1984); *see also Board of Directors v. Rotary Club*, —— U.S. ——, ——, 107 S.Ct. 1940, 1945, 95 L.Ed.2d 474 (1987) (same); *Brandenburg*, 395 U.S. at 449 n. 4, 89 S.Ct. at 1830 n. 4 ("Statutes affecting the right of assembly, like those touching on freedom of speech, must observe the established distinctions between mere advocacy and incitement to lawless action....").

To avoid the difficult constitutional problems posed by an interpretation of the first paragraph of the injunction as constituting a flat ban on participation in the WSEC, we must interpret the order more narrowly. As we read the injunctive order, Kaun may not incite other WSEC members or would-be members to understate their tax liability or avoid paying taxes by means of the false and frivolous theories outlined in the order. Thus, Kaun may be found in contempt of the injunction under this paragraph if the evidence shows that Kaun actually persuaded others, directly or indi-

---

**3.** Under *Brandenburg*, therefore, a person may not be prosecuted for merely advocating unlawful activity—only for speech that leads to "imminent lawless action." However, the legislative history of § 6700 makes clear that in order to hold the promoter of an abusive tax shelter liable, "[t]here need not be reliance by the purchasing taxpayer or actual underreporting of tax." S.Rep. No. 97–494, 97th Cong., 2d Sess.

267, *reprinted in* 1982 U.S.Code Cong. & Admin. News 781, 1015. It is therefore possible that the broad scope of § 6700 may reach a person who merely advocates the nonpayment of taxes in general. This result would clearly run afoul of *Brandenburg*. However, because the evidence in this case shows that Kaun's activities did in fact lead to lawless action, we need not address this problem today.

rectly, to violate the tax laws, or if the evidence shows that Kaun's words and actions were directed toward such persuasion in a situation where the unlawful conduct was imminently likely to occur. Kaun is free, however, to continue to attend WSEC meetings and to share his general beliefs about the federal tax system. Interpreted in this way, the first paragraph of the injunctive order restrains only speech that is unprotected by the Constitution.

### B.

■ The second paragraph of the injunctive order against Kaun prohibits him from "advertising, marketing, or selling any documents or other information advising taxpayers that wages, salaries, or other income not specifically excluded from taxation under Title 26 of the United States Code are not taxable income." As we read the order, the restrictions in this paragraph are clearly acceptable restrictions on false commercial speech.

The Supreme Court has defined commercial speech as "expression related solely to the economic interest of the speaker and its evidence," *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 561, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341 (1980); *see also Pacific Gas & Elec. Co. v. P.U.C. of California*, 475 U.S. 1, 106 S.Ct. 903, 908, 89 L.Ed.2d 1 (1986) (Commercial speech is "speech that proposes a business transaction."). Insofar as Kaun holds himself out as a tax adviser, his advertising and marketing activities in that regard are commercial speech.

"The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638, 105 S.Ct. 2265, 2275, 85 L.Ed.2d 652 (1985); *see also Central Hudson*, 447 U.S. at 563–64, 100 S.Ct. at 2350 ("The government may ban forms of communication more likely to deceive the public than to inform it, ... or commercial speech related to illegal activity...." (citations omitted)); *In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982) ("Misleading advertising may be prohibited entirely."). Because the

injunction at issue merely restrains Kaun from advertising, marketing, and selling materials that are based on false and misleading theories under the guise of tax advice, Kaun's First Amendment claim fails.

Similarly, the third paragraph of the injunction, to the extent that it restricts speech at all, restricts only speech used to further an illegal activity—namely, the preparation of a false income tax return. This type of speech is not constitutionally protected. *See United States v. Buttorff*, 572 F.2d 619, 624 (8th Cir.), *cert. denied*, 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978) (A criminal conviction for aiding and abetting the filing of fraudulent withholding statements was upheld against First Amendment challenge where the defendants had explained how to prevent the government from withholding taxes, "and their speeches and explanations incited several individuals to activity that violated federal law and had the potential of substantially hindering the administration of the revenue."); *see also United States v. Freeman*, 761 F.2d 549, 552 (9th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1982, 90 L.Ed.2d 664 (1986). ("[W]here speech becomes an integral part of the crime, a First Amendment defense is foreclosed even if the prosecution rests on words alone.").

### C.

■ The fourth and fifth paragraphs of the injunction, respectively, prohibit Kaun from filing Freedom of Information Act requests with the Internal Revenue Service, and from filing or helping to file any litigation based on frivolous claims with respect to federal income taxation. In accordance with the government's suggestion at oral argument, we read the fourth paragraph as prohibiting only frivolous or harassing FOIA claims. So understood, these paragraphs do not raise a constitutional problem.

"Just as false statements are not immunized by the First Amendment right to freedom of speech, ... baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Restaurants*,

*Inc. v. NLRB,* 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983) (citations omitted) (upholding injunction against harassing lawsuit). The district court, therefore, did not abuse its discretion in forbidding Kaun to participate in frivolous litigation. *See Procup v. Strickland,* 792 F.2d 1069, 1073–74 (11th Cir.1986); *Safir v. United States,* 792 F.2d 19, 23 (2d Cir. 1986); *Castro v. United States,* 775 F.2d 399, 408 (1st Cir.1985); *see also Coleman v. C.I.R.,* 791 F.2d 68 (7th Cir.1986) (affirming penalty for frivolous litigation). Frivolous FOIA requests are similarly not constitutionally protected.

Finally, the last paragraph of the order forbids Kaun from "engaging in any other conduct subject to penalty under section 6700." An injunction against participating in unlawful acts is clearly constitutional so long as the underlying law is constitutional, and Kaun does not dispute the facial constitutionality of § 6700.

### VI.

Finally, Kaun argues that the injunction against him is vague and overbroad. We reject these contentions.

█ An injunction may be set aside on appeal under Federal Rule of Civil Procedure 65(d) if it is not "specific in terms" or fails to "describe in reasonable detail ... the act or acts sought to be restrained." Fed.R.Civ.P. 65(d); *see Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1431 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1801, 90 L.Ed.2d 346 (1986). Moreover, an injunction that "either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Roberts,* 468 U.S. at 629, 104 S.Ct. at 3256; *see also Rios v. Lane,* 812 F.2d 1032, 1038 (7th Cir.1987) (same). Under the interpretation we have given the injunctive order against Kaun, the order is not constitutionally vague. *See Coleman,* 791 F.2d at 71 (upholding penalties imposed under I.R.C. § 6673 for filing frivolous suits against argument that word "frivolous" was unconstitutionally vague). Similarly, under Rule 65(d), we have stated

that "[a]ll that is required ... is for the language of the injunction to be as specific as possible under the totality of the circumstances, such that a reasonable person could understand what conduct is proscribed." *Medtronic, Inc. v. Benda,* 689 F.2d 645, 649 (7th Cir.1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983). The injunctive order in this case, as we have read it, meets this standard.

The injunction, as we have interpreted it, is also not overbroad. Under the constitutional doctrine of overbreadth, a statute or regulation may be invalid under the First Amendment if its sweep is so broad as to penalize a substantial amount of lawful as well as unlawful activity. *See United States v. Rodgers,* 755 F.2d 533, 542 (7th Cir.), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985). This is not such a case. We have read the injunctive order to prohibit only unlawful activity; it is therefore not overbroad.

### VII.

The district court properly based the injunction against Kaun on I.R.C. § 7408. Moreover, the district court did not abuse its discretion in concluding that the government was entitled to an injunction. Finally, as we have interpreted the injunction, the order against Kaun does not violate his First Amendment rights to freedom of expression and freedom of association; nor is it vague or overbroad. The judgment of the district court is, therefore,

AFFIRMED.

RIPPLE, Circuit Judge, concurring in the judgment.

The threat posed to the efficient and fair enforcement of our revenue laws by contemporary tax protester groups is well-established. Indeed, that threat has been explicitly recognized by the Congress and legislation has been enacted to combat that threat. I have no doubt that the Congress has the authority to take such action, even when that action results in a *necessary* limitation on the free speech rights of certain individuals.

### A

In my view, the district court, in granting the injunction, quite properly relied on *both* IRC section 7408 and IRC section 7402(a). While I agree with my brothers that section 7408 can be construed to permit injunctive relief against tax protester groups, I do not believe that section 7408, standing alone, provides adequate authority for an injunction as broad as the one issued by the district court in this case. Section 7408 is limited, by its terms, by section 6700. While I have no difficulty joining my brothers in determining that a tax protester organization is a "plan or arrangement" within the meaning of section 6700(a)(1)(A)(iii), I find it difficult to stretch the language of section 6700(a)(2) to cover *all* of the activity that the government seeks to enjoin here. For instance, I find it difficult to stretch this statutory language to cover such activity as filing frivolous Freedom of Information Act claims in an effort to disrupt government collection of taxes.

### B

One other aspect of the district court's decision requires additional commentary. As the majority opinion points out, the injunction in this case includes within its ambit the value at the very heart of the first amendment—political speech. It also involves the government's use of its most potent weapon to curtail free expression—prior restraint. In *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.2d 683 (1976), after reviewing prior restraint analysis in earlier cases, the Supreme Court wrote:

> The thread running through all these cases is that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. A criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring the impact of the judgment until all avenues of appellate review have been exhausted. Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative.

> A prior restraint, by contrast and by definition, has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication "chills" speech, prior restraint "freezes" it at least for the time. (footnote omitted).

The judiciary has very special responsibilities in this area. It is quite easy to sympathize with the position of the Internal Revenue Service in a case such as this one. Enforcement of the revenue laws is a very important undertaking. Those who undertake this responsibility demonstrate great dedication and, at times, courage. However, this reality hardly allows us to relax our guardianship of the first amendment. As Justice Brandeis wrote in *Olmstead v. United States,* 277 U.S. 438, 479, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1938) (dissenting opinion):

> Experience should teach us to be most on our guard to protect liberty when the Government's purposes are beneficent. Men born to freedom are naturally alert to repel invasion of their liberty by evil-minded rulers. The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding. (footnote omitted).

The fulfillment of this responsibility requires that the trial judge examine critically evidentiary submissions—especially when those submissions relate to the degree of disruption that the speech in question has allegedly caused. Conclusory statements by government witnesses must be supported by hard facts. I believe that the experienced district judge was sufficiently cognizant of this obligation to warrant affirmance of the judgment. Yet, I do find disturbing the district court's *partial* reliance on statements of opinion and conclusions of the government witnesses. It is for the court, not the witnesses, to determine whether the defendant's speech caused disruption to the collection of taxes and, if so, to what degree.

In short, I believe it would be a mistake for the government or for the district courts in this circuit to interpret this case as signaling any diminution in our scrutiny

of government submissions aimed at curtailing first amendment rights.