In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4024

United States of America,

Plaintiff-Appellee,

v.

Robert R. Raymond, individually and doing
business as Morningstar Consultants,
and Robert G. Bernhoft, individually and
doing business as Morningstar Consultants,

Defendants-Appellants.


Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 97-C-207--Charles N. Clevert, Judge.


Argued June 2, 2000--Decided September 26, 2000


    Before Flaum, Chief Judge, and Evans and Williams,
Circuit Judges.

    Flaum, Chief Judge.  Robert Raymond and Robert
Bernhoft appeal the district court's entry of a
permanent injunction preventing them from
engaging in a number of activities related to the
sale of a collection of materials known as the
"De-Taxing America Program." For the reasons
stated herein, we affirm.

I.  BACKGROUND

    Raymond and Bernhoft are active members of the
U.S. Taxpayers Party and were the chief
participants in a business known as Morningstar
Consultants ("Morningstar"). Between January and
June of 1996, Morningstar ran a weekly
advertisement in a local Wisconsin newspaper
under the caption "Just Say No." The Just Say No
advertisement contained the following statements:
1) "Federal, State & Social Security Taxes are
Voluntary;" and 2) "The Internal Revenue Service
has no Statutory Authority to: Compel you to file
a Tax Return, Require withholding from your
paycheck, Levy or Lien your property, Audit your
Books & Records." This advertisement was part of
an effort by Morningstar to market the "De-Taxing
America Program" (the "Program").

The Program consists of three volumes of materials. These materials contain information presenting the view that, among other things, the federal income tax is unconstitutional and that persons who are not federal employees or residents of the District of Columbia are not legally required to pay federal income tax. In addition to providing information regarding general tax-protest principles, the Program includes several forms and instructions to guide the purchaser through the process of "de-taxing." Purchasers are informed that if they complete the materials and directions in the Program they will be "withdrawn" from the jurisdiction of the federal government's taxing authorities and the social security system and will no longer be required to pay federal taxes.

The materials in the Program are pre-printed with the purchaser's name and various personal information. The Program instructs the purchaser to, among other things, send pre-printed letters and numerous Freedom of Information Act ("FOIA") requests to various government agencies, including the Internal Revenue Service ("IRS"), the Social Security Administration ("SSA") and the Attorney General. Program customers are instructed to file W-4 forms with their employers asserting that they are exempt from federal taxation and requesting that the employers stop withholding federal income tax and social security payments from their paychecks. The Program also informs the purchaser that since any previous tax payments were made entirely voluntarily, he or she may request a refund of taxes paid in prior years. The Program then directs the purchaser to file several forms with the IRS requesting a refund of taxes paid over the previous three years. The Program also provides the purchaser with instructions on how to complete future tax returns to reflect that the purchaser has not incurred any tax liability in the previous year and consequently does not owe any federal income or social security taxes. The Program represents that all of the activities it instructs its purchasers to pursue are legal and that it is legal for purchasers to cease paying federal taxes after completing the instructions provided in the Program materials.

Morningstar sold the Program to fifty-five customers in several different states for a negotiated price ranging from $445 to $2,600 and earned at least $34,578 from the sale of the Program. At least 12 Program customers informed their employers that they were exempt from withholding and requested that the employers stop withholding federal tax payments from their paychecks. At least 20 Program customers failed

to file income tax returns for either the 1995, 1996 or 1997 tax year, which the IRS estimates resulted in a loss of $691,731 to the United States. In addition, the IRS estimates that it spent a total of 291 hours responding to more than 124 FOIA and Privacy Act requests sent by the appellants or their customers. The IRS also estimates that it spent more than 500 hours on administrative functions such as audits, responding to frivolous W-4 forms, and collecting delinquent taxes as a result of the conduct of persons who purchased Program materials.

By the summer of 1996, the appellants had stopped selling and promoting the Program. On November 15, 1996, the IRS informed the appellants that an investigation of their involvement with the sale of the Program had been completed and that the IRS would pursue penalties and a civil injunction as a result of this investigation. On March 3, 1997, at the request of IRS Assistant District Counsel Edward G. Langer, the Attorney General filed a civil suit under 26 U.S.C. sec. 7408, requesting a permanent injunction against the appellants' sale of the Program and against the appellants' participation in any conduct intended to interfere with the enforcement of the internal revenue laws./1

The suit was referred to a magistrate judge where the Government moved for summary judgment. The magistrate judge issued a report recommending that the Government's motion be granted and a permanent injunction be entered against the appellants./2 The magistrate's report also informed the parties that they had ten days to submit objections to the report and that failure to file objections within that time period "shall result in a waiver of your right to appeal all factual and legal issues." The appellants requested an extension of time to file their objections that the district court granted. However, the appellants did not file their objections until two days after the extended deadline. Because the appellants' objections were filed late, the district court issued an order adopting the magistrate's recommendation in its entirety without review. The appellants then filed a motion to reconsider that the district court denied because it found there was no excusable neglect for the appellants' late filing of their objections. The district court then went on to state that it would have adopted the magistrate's recommendation even if the appellants had filed their objections in a timely fashion. Raymond and Bernhoft now appeal.

II.  DISCUSSION
A.  Jurisdiction

The appellants first assert that the district court had no jurisdiction to hear this case because the Secretary of the Treasury had not authorized suit against the appellants as required by the provisions of 26 U.S.C. sec. 7408./3

The appellants assert that the district court receives jurisdiction from sec. 7408 to enter an injunction to enforce a violation of sec. 6700. However, the district court in fact is granted jurisdiction to enter injunctions to enforce the provisions of the Internal Revenue Code ("IRC"), 26 U.S.C. sec. 1 et seq., through the broad grant of power authorized by sec. 7402(a)./4 Section 7402(a) explicitly grants district courts the authority to issue injunctions to enforce the tax laws and states that all remedies that are normally available to the United States to enforce its laws are not limited by that section.

Section sec. 7408, on the other hand, provides a cause of action for injunctive relief to the United States against a party suspected of violating the tax laws that is independent of any other cause of action. The specific provisions of that section, including the provision that the suit must be authorized by the Secretary of the Treasury or his delegate, are procedural and not jurisdictional. Therefore, even if we were to conclude that the United States had not received proper authorization from the Secretary of the Treasury, that fact would not affect the jurisdiction of the district court.

However, we conclude that this suit was properly authorized by a delegate of the Secretary of the Treasury. On January 28, 1997, Edward G. Langer, Assistant District Counsel for the Internal Revenue Service, wrote a letter to Loretta C. Argrett, Assistant Attorney General for the Tax Division of the Department of Justice, requesting and authorizing that the Justice Department commence an action to seek injunctive relief against the appellants under 26 U.S.C. sec.sec. 7402 and 7408. Assistant District Counsel Langer submitted a declaration to the district court asserting that he was duly authorized by the Secretary of the Treasury to request that this action be commenced. The appellants had ample opportunity to produce evidence that contradicts this declaration and have not done so. Therefore, we consider his declaration sufficient evidence of Langer's authority to authorize this suit. See First National Bank v. Insurance Co. of N. Amer., 606 F.2d 760, 768 (7th Cir. 1979) ("It is a general rule of summary judgment procedure that denying the allegations of affidavits supporting a motion

for summary judgment does not, Ipso facto, create a genuine issue of material fact. Mere denials unaccompanied by statements of any facts which would be admissible in evidence at a hearing, are not sufficient to raise a genuine issue of fact.") (citation omitted); Wang v. Lake Maxinhall Estates, Inc., 531 F.2d 832, 835 n.10 (7th Cir. 1976) (stating that at the summary judgment stage uncontradicted affidavits are taken as true). Thus, we conclude that the district court had jurisdiction to hear the Government's claims against Bernhoft and Raymond./5

B.  Waiver

The Government argues that because the appellants failed to file timely objections to the magistrate's report, they have waived their right to appeal all factual and legal issues to either the district court or to this Court.

In Thomas v. Arn, 474 U.S. 140, 155 (1985), the Supreme Court held that a circuit rule permitting both the district court and the court of appeals to refuse to review a magistrate's report absent timely objection does not violate the Constitution, provided that the parties are given clear notice that they may request an extension of time for filing objections and that their failure to file timely objections may result in their inability to appeal the magistrate's recommendation. The Court then noted that "because [this] rule is a nonjurisdictional waiver provision, the Court of Appeals may excuse the default in the interests of justice." Id. In Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538 (7th Cir. 1986), we adopted such a rule in this Circuit, concluding that failure to file objections to a magistrate's report with the district judge waives the right to appeal but that the party who failed to object has "the opportunity to demonstrate that it had sufficient cause for failing to object, such that waiver should not be applied." Id. at 539-40; see also Provident Bank v. Manor Steel Corp., 882 F.2d 258, 261 (7th Cir. 1989). In Hunger v. Leininger, 15 F.3d 664 (7th Cir. 1994), we clarified our standard for determining when wavier should be found because objections to a magistrate's report are filed late. We concluded that waiver should not be applied where "the filing [of objections] was not egregiously late and caused not even the slightest prejudice to the [opposing party]." Id. at 668; see also United States v. Robinson, 30 F.3d 774, 777 (7th Cir. 1994) (holding that the appellant had not waived his right to appeal where he filed objections to a magistrate's report two days late and the Government was not prejudiced by the late filing).

In this case, the appellants filed their objections to the magistrate's report only two days late. The objections were actually mailed on the day that they were due and the appellants claim that their error was based on a good faith misapprehension of the law--they thought the objections would be considered filed on the day they were mailed rather than the day they were received. In addition, the appellants were scrupulous in meeting all of the other deadlines in this case. The Government has identified no prejudice that it incurred because of the late filing of the appellants' objections, and those objections were not egregiously late. Therefore, we decline to conclude that the appellants have waived their right to appeal, and we now address the merits of that appeal.

C.   Summary Judgment

The district court granted summary judgment for the Government and entered a permanent injunction against the appellants forbidding them from engaging in certain activities that incited others to violate the tax laws. We review the district court's decision to grant summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is appropriate only if there is no genuine dispute of material fact and judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c); see Doe v. Cunningham, 30 F.3d 879, 882 (7th Cir. 1994).

The district court entered this injunction under 26 U.S.C. sec. 7408. Section 7408 grants a district court the authority to enter a permanent injunction against a defendant if it finds "(1) that the person has engaged in any conduct subject to penalty under section 6700 . . ., and (2) that injunctive relief is appropriate to prevent recurrence of such conduct." 26 U.S.C. sec. 7408(b); United States v. Kaun, 827 F.2d 1144, 1147 (7th Cir. 1987). The appellants argue that there is a genuine issue of material fact as to whether the Government proved each of these elements and that, therefore, the district court erred in entering summary judgment for the Government.

1.        Violation of 26 U.S.C. sec. 6700

In order to establish a violation of 26 U.S.C. sec. 6700, the Government must prove "(1) that the defendant was involved in an abusive tax shelter, and (2) that the defendant made statements about the tax benefits investors would receive if they participated in the shelter which

the defendant knew or had reason to know were false or fraudulent." Kaun, 827 F.2d at 1147.

### a. Tax shelter

Under sec. 6700 any "plan or arrangement" having some connection to taxes can serve as a "tax shelter" and will be an "abusive" tax shelter if the defendant makes the requisite false or fraudulent statements concerning the tax benefits of participation. See 26 U.S.C. sec. 6700(a)(1)(A); Kaun, 827 F.2d at 1147./6 In United States v. Kaun, we held that the definition of a tax shelter in sec. 6700 is "clearly broad enough to include a tax protester group." Kaun, 827 F.2d at 1148. In that case, we concluded that the Wisconsin Society for Educated Citizens ("WSEC"), an organization whose primary purpose was to incite members to evade the tax laws by engaging in a variety of activity disruptive to the IRS including the filing of false or fraudulent returns, was a plan or arrangement that operated as an abusive tax shelter as defined by sec. 6700. Id. at 1149.

In this case, the appellants participated in Morningstar Consultants in order to promote and sell the De-Taxing America Program. The Program purported to provide step-by-step instructions for "removing" the purchaser from the federal income and social security tax systems. The Program materials assured readers that the federal government is without authority to tax them and that by following the instructions outlined in the Program individuals can legally refuse to pay federal income and social security tax. Several of Morningstar's customers took steps to evade the federal tax laws and filed false or fraudulent income tax returns relying on the instructions and assertions made in the Program materials. As with the WSEC in Kaun, we conclude that the Program is a tax shelter as defined by sec. 6700 and that the appellants' sale of the Program to over 55 customers in several states through the business known as Morningstar Consultants is the sale of an interest in a plan that constitutes a tax shelter as defined by sec. 6700(a)(1)(B).

### b. False statements concerning tax benefits

In order to prove a violation of sec. 6700, the Government must also show that the appellants made false or fraudulent statements concerning the tax benefits of participating in the plan or arrangement. 26 U.S.C. sec. 6700(a)(2)(A); Kaun, 827 F.2d at 1147. In Kaun, the defendant held WSEC meetings where he encouraged members and

potential members to file frivolous FOIA requests, request that their employers forego withholding federal taxes from their paychecks, file false tax returns, and file fraudulent requests for tax refunds. Id. at 1149. We held that this activity was sufficient to satisfy the false or fraudulent statements element of sec. 6700.

In this case, there is a disputed question of fact concerning whether the appellants held meetings where they made statements to Program customers and potential customers that encouraged them to evade federal tax laws. However, it is undisputed that from January through June of 1996, the appellants ran the "Just Say No" advertisement in a local Wisconsin paper in an effort to induce potential customers to purchase the De-Taxing America Program. In that advertisement, the appellants made the representations that payment of income tax is a voluntary activity and that individuals cannot be legally compelled to file tax returns or submit to tax investigations or penalties. The advertisement directed readers to contact Morningstar Consultants "for more information" regarding these assertions. Upon contacting Morningstar, callers were encouraged to purchase the De-Taxing America Program, and several individuals in fact purchased the Program from the appellants.

The statements appellants made in the Just Say No advertisement are clearly false representations concerning the government's authority to tax its citizens. See, e.g., United States v. Hilgeford, 7 F.3d 1340, 1342 (7th Cir. 1993) (stating that the argument that an individual is a sovereign citizen of a state who is not subject to the jurisdiction of the United States and not subject to federal taxing authority is "shop worn" and frivolous); United States v. Sloan, 939 F.2d 499, 500-01 (7th Cir. 1991) (same); Coleman v. Commissioner of Internal Revenue, 791 F.2d 68, 70-72 (7th Cir. 1986) (stating that the assertions that the federal income tax is not a tax on all income, that wages are not income, and that a tax on wages is unconstitutional are "tired arguments" that are "objectively frivolous"); Kile v. Commissioner of Internal Revenue, 739 F.2d 265, 267-68 (7th Cir. 1984) (noting the "universal and longstanding rejection" of the argument that wages are not subject to income tax and that the federal income tax is unconstitutional). These statements made in conjunction with the sale of the Program operated as false assurances that refusing to pay taxes in accordance with the Program's instructions is a lawful activity for which the government has no legal authority to punish

Program subscribers. As the district court noted, the appellants are intelligent men. Bernhoft has recently graduated from the University of Wisconsin Law School. Raymond has run his own business for twenty years and was the U.S. Taxpayers Party's candidate for the United States Senate. We attribute to both appellants a basic knowledge of the law such that they should reasonably be aware that their personal belief that paying taxes is a voluntary activity does not represent the current state of the law. Therefore, we conclude that the statements the appellants made in the Just Say No advertisement were representations concerning the tax benefits of purchasing and following the De-Taxing America Program that the appellants reasonably should have known were false.

Because the appellants participated in the sale of the abusive tax shelter that is the De-Taxing America Program and because the appellants made false or fraudulent statements concerning the benefits to be derived from the Program, we conclude that the district court did not err in finding that the appellants' conduct violated 26 U.S.C. sec. 6700.

2.   Likelihood of Recurrence

The appellants next contend that the district court erred when it found that a permanent injunction was necessary to prevent the appellants from engaging in unlawful activity in the future. They assert that because they stopped selling the Program before they were even aware that the government was investigating their activities and because they submitted declarations to the district court that they would not sell the Program in the future, the district court erred in concluding that there was a significant chance that the appellants would engage in unlawful activity such that a permanent injunction was required.

In order to determine whether there is a significant likelihood that the appellants' involvement in the illegal activity at issue in this case will reoccur, we examine the totality of the circumstances surrounding the appellants and their violation of the law. See Kaun, 827 F.2d at 1149. We look at factors such as: (1) "the gravity of harm caused by the offense;" (2) "the extent of the defendant's participation and his degree of scienter;" (3) "the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transaction;" (4) "the defendant's recognition of his own culpability;" and (5) "the sincerity of his assurances against future

violations." Id. at 1149-50; see also United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953).

The appellants first challenge the district court's finding that their activities significantly harmed the United States. The appellants assert that the district court erred when it chose to believe the assertions of IRS investigators as to the amount of loss suffered by the United States as a result of the refusal of Program customers to pay taxes, the numerous FOIA and Privacy Act requests that were prompted by Program instructions to which various federal agencies were required to respond, and the investigation and collection activities that the IRS was required to pursue in response to Program customers' refusal to pay taxes, requests for refunds and requests that taxes not be withheld from their paychecks. The appellants note that no criminal charges were pressed against them in part because the Assistant United States Attorney in charge of prosecuting their case determined that the loss to the government was not significant enough to merit a criminal prosecution. The appellants assert that this fact creates a genuine issue of material fact as to whether the loss was significant enough to merit a permanent injunction.

The Government presented the declarations of several Program customers who admitted failing to file income tax returns, filing requests for refunds to which they were not entitled, and submitting numerous FOIA requests. In addition, the Government presented the declarations of IRS officers regarding the administrative burden placed on the IRS when it was required to respond to Program customers' information requests, investigate Program customers' unlawful tax evasion activities, and engage in collection efforts for taxes that were not paid by Program subscribers. While disputes about the amount of loss make it difficult to determine at this stage the actual loss suffered by the United States as a result of the appellants' activities, it is clear from the record that a significant loss did in fact result. The fact that the Justice Department did not consider this loss worthy of criminal sanction does not contradict this determination. See United States v. Palumbo Brothers, Inc., 145 F.3d 850, 860 (7th Cir. 1998) (noting that conduct that violates civil labor laws must be analyzed independently to determine whether it also merits criminal sanctions). Therefore, we conclude that the district court did not err when it found that the appellants' activities in selling and promoting the Program caused a loss to the government sufficient to support the need for a permanent injunction.

Appellants do not dispute that they were the primary figures in Morningstar Consultants or that Morningstar's chief purpose was to sell the De-Taxing America Program. Therefore, we conclude that the appellants were significant participants in the sale of the "abusive tax shelter" that is the subject of this case. Furthermore, when customers contacted Morningstar to purchase the Program, they were asked to provide personal information that would be included on the pre-printed forms that were part of the Program materials. Thus, we also conclude that the appellants acted with the intent that Program purchasers follow the instructions provided in the Program materials and submit the forms and letters contained therein. In addition, the appellants' activities were not an isolated instance of misconduct but consisted of the sale of the Program to at least 55 persons over a six month period.

Moreover, the appellants have expressed no remorse concerning their participation in the unlawful activities at issue here. Throughout the documents they presented to the district court and during oral argument before this Court, the appellants consistently held to their view that federal tax laws are unconstitutional and that the government has no authority to compel the payment of federal taxes. In Kaun, we concluded that the fact that the defendant "steadfastly maintained his total lack of culpability" was an indication that he would likely engage in similar unlawful activity in the future in the absence of an injunction prohibiting such activity. 827 F.2d at 1150. This case does differ from Kaun, in that the appellants here stopped selling the Program before the IRS investigation of their activities had come to fruition and have asserted before the district court that they will not engage in such activities in the future.

We recognize that the defendants had not been involved in the challenged activity for several months before the action to enjoin this activity was commenced. However, while voluntary cessation of unlawful activity and promises not to engage in that activity in the future are relevant to determining the necessity of an injunction, they do not lead inevitably to the conclusion that an injunction is unnecessary. See W.T. Grant Co., 345 U.S. at 633 ("Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct."); see also City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982); Milwaukee Police Ass'n v. Jones, 192 F.3d 742, 748 (7th Cir. 1999). The appellants continue to be active members of the U.S. Taxpayers Party and

continue to forcefully advocate their beliefs regarding the alleged dubious legality of the federal tax system. In addition, they have refused to acknowledge that their conduct in this matter was anything other than perfectly lawful. In light of these facts, we conclude that their claims that they will not engage in unlawful activity in the future are insufficient to overcome the other circumstances that indicate that there is a significant likelihood that the appellants will again incite others to violate the tax laws. See Haywood v. North Am. Van Lines, Inc., 121 F.3d 1066, 1071 (7th Cir. 1997) ("[C]onclusory allegations and selfserving affidavits, if not supported by the record, will not preclude summary judgment."); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment."). Accordingly, the district court was justified in finding that a permanent injunction was necessary under these circumstances.

D.  First Amendment

The appellants finally argue that the injunction entered against them by the district court violates their right to freedom of speech. The appellants contend that their activities concerning the promotion and sale of the De-Taxing America Program constitute political advocacy that is protected by the First Amendment and that the district court's injunction is an unconstitutional prior restraint on political speech.

The injunction issued by the district court in this case is virtually identical to the injunction at issue in Kaun./7 See 827 F.2d at 1146 n.1. In that case, we expressed our grave concern regarding the constitutionality of the injunction issued by that district court. However, we elected to construe the injunction narrowly so that its provisions fit within the bounds of the Constitution rather than strike down the injunction and require the district court to fashion a more narrowly-drawn order. See id. at 1150. Like the Kaun injunction, we conclude that the injunction here is a prior restraint on speech. See id.; see also Alexander v. United States, 509 U.S. 544, 550 (1993) ("Temporary restraining orders and permanent injunctions--i.e., court orders that actually forbid speech activities--are classic examples of prior restraints."). However, as in Kaun, we construe the injunction narrowly such that it is not an impermissible prior restraint that violates the First Amendment rights of the appellants.

The district court has re-written the first paragraph of the Kaun injunction so that it clearly applies only to activities that incite others to violate the tax laws. Incitement to imminent unlawful activity is unprotected speech, see Brandenburg v. Ohio, 395 U.S. 444, 447 (1969), and an individual may be enjoined from engaging in it. See Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations, 413 U.S. 376, 390 (1973); Times Film Corp. v. City of Chicago, 365 U.S. 43, 47-48 (1961); Near v. Minnesota, 283 U.S. 697, 716 (1931). As in Kaun, we interpret this paragraph to mean that the appellants may be found in contempt only where the evidence shows that they "actually persuaded others, directly or indirectly, to violate the tax laws" or if their "words and actions were directed toward such persuasion in a situation where the unlawful conduct was imminently likely to occur." 827 F.2d at 1151-52. With this interpretation, the first paragraph of the injunction poses no constitutional difficulties.

The second paragraph of the injunction pertains to advertising, marketing or selling documents that provide false income tax advice. Following our reading of the Kaun injunction, we interpret the second paragraph to prohibit only false, deceptive or misleading commercial speech that is related to the provision of tax advice. 827 F.2d at 1152. It is permissible for the government to prevent the dissemination of false or misleading commercial speech. See Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading."); Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 561-62 (1980). Therefore, the second paragraph, as we now construe it, does not exceed the government's power to constitutionally regulate speech.

The third paragraph relates to the provision of materials or assistance for the filing of false IRS forms. As with the first paragraph, we read the third paragraph to prevent only speech used to further the imminent illegal activity of preparing false tax forms. See Kaun, 827 F.2d at 1152. As noted above, speech intended to incite imminent unlawful activity is not constitutionally protected. Therefore, this paragraph, as we read it, does not present First Amendment concerns.

The fourth paragraph prohibits the filing of frivolous FOIA requests with the IRS. In Kaun, we held that frivolous FOIA requests, like frivolous litigation, are not constitutionally protected.

Id. at 1153. Therefore, we conclude that the fourth paragraph of the injunction also poses no constitutional difficulties.

The fifth paragraph of the injunction is simply a flat prohibition on activity that violates 26 U.S.C. sec. 6700. As noted above, courts may enjoin illegal activity without running afoul of the constitution.

As with the injunction in Kaun, we have narrowly construed the provisions of the district court's injunction in order to preserve it from the constitutional difficulties that a broader reading would present. However, we caution district courts, wherever possible, to craft injunctions that are not in need of narrowing constructions by this Court. Although we did not strike down the injunction in Kaun, we expressed our serious concerns regarding the potential breadth with which the language used by that district court could be read. Kaun, 827 F.2d at 1150, 1151. Rather than simply repeating that language and depending on this Court's restrictive reading to avoid constitutional complications, the district court should have drafted in the first instance an injunction that was narrowly tailored to prohibit only those activities that can be restrained consistent with the First Amendment. However, as in Kaun, we have construed this district court's injunction narrowly and conclude that under this restrictive reading, the injunction does not violate appellants' First Amendment rights.

III.  CONCLUSION

For the foregoing reasons, the district court's entry of a permanent injunction preventing the defendants from engaging in various activities related to the sale of the "De-Taxing America Program" and the incitement to violate federal tax laws is

Affirmed.

/1 Criminal charges were not pursued against the appellants because the Government determined that the amount of loss suffered by the United States did not warrant criminal penalties and because the Government was concerned that a criminal prosecution of the appellants would implicate the appellants' rights under the First Amendment.

/2 The injunction entered against the appellants orders that the appellants:

"are hereby ENJOINED, directly or indirectly from

engaging or undertaking to engage in any and all of the following activities:

1. Inciting other individuals and entities to understate their federal tax liabilities, avoid the filing of federal tax returns, or avoid paying federal taxes based upon (a) the false representation that wages, salaries, or other compensation for labor or services are exempt from federal income taxation, or (b) any other such frivolous claim with respect to the scope of federal income taxation, or (c) any false or fraudulent claim regarding the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit for federal income tax purposes;

2. Advertising, marketing, or selling any documents or other information advising taxpayers that wages, salaries, or other income not specifically excluded from taxation under Title 26 of the United States Code are not taxable income;

3. Providing forms for or assisting any individual in the preparation of false Internal Revenue Forms W-4, W4E, 1040X, and any other form, return, or declaration claiming that the taxpayer is exempt from federal income taxation or entitled to excessive withholding allowances;

4. Filing, providing forms for, or otherwise aiding and abetting the filing of frivolous Freedom of Information requests with the Internal Revenue Service; and

5. Engaging in any other conduct subject to penalty under Section 6700 of the Internal Revenue Code, Title 26 of the United States Code.

/3 Section 7408 provides in relevant part:

(a)  Authority to seek injunction--A civil action in the name of the United States to enjoin any person from further engaging in conduct subject to penalty under section 6700 . . . may be commenced at the request of the Secretary [of the Treasury]. . . . The court may exercise its jurisdiction over such action (as provided in section 7402(a)) separate and apart from any other action brought by the United States against such person.

/4 Section 7402(a) provides in pertinent part:

The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction . . . and to render such judgments and decrees as may be

necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

/5 The appellants have submitted a Motion to Strike Portions of Appellee's Brief, and Motion for an Order to Show Cause Why Government Counsel Should Not Be Sanctioned. These motions are based on the Government's inclusion in the appendix to its brief of two documents that were not included in the record before the district court below. The Government referred to these documents in a footnote to its brief and pointed out that the documents were not part of the record below.

We agree with the appellants that the inclusion of these documents in the Government's appendix was improper, and we have not relied on these documents in our consideration of this case. See Berwick Grain Co., Inc. v. Illinois Dep't of Agric., 116 F.3d 231, 234 (7th Cir. 1997) ("The appellate stage of the litigation process is not the place to introduce new evidentiary materials."); Holmberg v. Baxter Healthcare Corp., 901 F.2d 1387, 1392 n.4 (7th Cir. 1990) (noting that references to facts outside the record are properly stricken). Therefore, we will grant the appellants' motion to strike these documents from the Government's appendix and references to these documents in the Government's brief.

However, we cannot conclude that the Government's conduct here merits sanctions. Therefore, we deny the appellants' motion for an order to show cause why the government should not be sanctioned.

/6 Section 6700 of Title 26 of the United States Code provides monetary penalties for:

(a) . . .--Any person who--

(1)(A) organizes (or assists in the organization of)--

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes or causes another person to make or furnish (in connection with such

organization or sale)--

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter . . . .

/7 The injunctions are identical with the following exceptions:

In the first paragraph the words "Organizing, selling, or assisting in the organization of an entity or otherwise promoting any plan or arrangement based upon . . ." in the Kaun injunction, see 827 F.2d at 1146 n.1, have been replaced by the words "Inciting other individuals and entities to understate their federal tax liability, avoid the filing of federal tax return, or avoid paying federal taxes based upon . . . ."

The fifth paragraph of the Kaun injunction regarding the filing of frivolous lawsuits has been omitted and the sixth paragraph of the Kaun injunction is re-numbered as the fifth paragraph of the instant injunction.