UNITED STATES of America, Plaintiff,

v.

Irving BROWN, Sr., d/b/a Irving Brown Sr. Tax Services, Defendant.

No. 15 CV 3283

United States District Court, N.D. Illinois, Eastern Division.

Signed 04/04/2017

AUSA, United States Attorney's Office, Chicago, IL, Jordan Andrew Konig, Mary A. Stallings, U.S. Department of Justice, Washington, DC, for Plaintiff.

Jonathan Decatorsmith, Tax Clinic, Law Office at Chicago–Kent College of Law, Chicago, IL, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Marvin E. Aspen, United States District Judge

On April 14, 2015, the United States of America filed suit in against Irving Brown, Sr., D/B/A Irving Brown Sr. Tax Services, seeking a permanent injunction under Section 7402, 7407, and 7408 of the Internal Revenue Code. Specifically, the United States seeks to permanently bar Brown Sr., individually and doing business as Irving Brown Sr. Tax Services, from acting as a federal tax return preparer and from engaging in conduct subject to penalty under the Internal Revenue Code. A two day permanent injunction hearing was conducted beginning on February 13, 2017. For the reasons stated below, we grant the United States' request for a permanent injunction.

### *Findings of Fact*

Pursuant to Federal Rule of Civil Procedure 52(a), we begin with a recitation of the relevant facts. In doing so, we rely on the parties' stipulation of facts, (Pl.'s Ex. 33), their proposed findings of fact, (Dkt. Nos. 38, 41), the witnesses' direct testimony submitted prior to the hearing, (Dkt. Nos. 39, 47, 56), and the transcripts of hearing testimony.

*Brown Sr.'s Business*

1. Irving Brown, Sr. is a paid tax return preparer who has prepared and filed federal income tax returns for taxpayers in the Chicago area since 1999. (Stipulation of Uncontested Facts (Pl.'s Ex. 33) ¶ 3.) Brown Sr. worked for the Chicago Fire Department starting in 1980 and retired in 2011 with the rank of Captain. (*Id.* ¶ 16.)

2. Many customers of Brown Sr. are firefighters with the Chicago Fire Department. (*Id.* ¶ 17.)

3. Irving Brown Sr. operates a seasonal tax return preparation business out of his home in Chicago, under the name Irving Brown Sr. Tax Services. (*Id.* ¶ 3.)

4. Irving Brown Sr. is a tax return preparer within the meaning of 26 U.S.C. § 7701(a)(36). (*Id.* ¶ 27.) Brown Sr. was a tax preparer, within the meaning of 26 U.S.C. § 7701(a)(36), for all tax returns that were submitted to the Internal Revenue Service ("IRS") bearing his name and/or PTIN number on the final section of Form 1040 ("Paid Preparer Use Only"). (*Id.* ¶ 28.)

5. Irving Brown Sr. does not hold any professional or business licenses. (*Id.* ¶ 4.) Brown Sr.'s tax training consists of taking a six or seven-week tax preparation class in 2009, completing 40 hours of online continuing education training in 2010, attending IRS webinar presentations, a 60–hour H & R Block course, and utilizing online training resources. (*Id.*)

6. The IRS assigns an Electronic Filing ID Number ("EFIN") to firms that have completed an application process and have passed a suitability check to become an authorized IRS e-file provider able to file returns electronically. (*Id.* ¶ 5.) Since January 1, 2012, IRS regulations have required any tax return preparer who anticipates preparing and filing 11 or more Forms 1040, 1040A, 1040EZ and 1041 dur-

ing a calendar year to obtain an EFIN and use IRS e-file. (*Id.*) The IRS assigned Irving Brown Sr. Tax Services EFIN 362960, which Brown Sr. used to electronically file his customers' tax returns with the IRS. (*Id.* ¶ 9; Declaration of Peter Chlimon (Pl.'s Ex. 1) ¶ 19.)

7. On January 8, 2015, the IRS suspended the EFIN of Irving Brown Sr. Tax Services. (Stipulation of Uncontested Facts ¶ 7.) However, Brown Sr. continued to prepare and transmit taxes to the IRS using the EFIN assigned to The Jordan Taylor Group LLC, which is a Chicago-area tax preparation business owned by Brown Sr.'s associate, Carl Douglas. (Declaration of Peter Chlimon ¶ 21.) Brown Sr. prepared 107 federal tax returns for his customers after his EFIN was revoked and submitted them using the EFIN of the Jordan Taylor Group. (*Id.* ¶ 22.)

8. The IRS assigns every return preparer a unique Preparer Tax Identification Number ("PTIN"), which must be affixed to every return the preparer files. (*Id.* ¶ 17.) Brown Sr. was assigned PTIN number P01339271 in December 2010 for use in preparing personal income tax returns for other individuals. (*Id.*; Stipulation of Uncontested Facts ¶ 8.) As of April 1, 2015, Brown Sr. filed 92 of the 107 returns he prepared after the Irving Brown Sr. Tax Services EFIN was revoked under the PTIN of an unrelated, legitimate tax preparer whose PTIN is similar to that of Brown Sr. (Declaration of Peter Chlimon ¶ 22.) The incorrect PTIN makes it appear that another, unrelated preparer in Illinois is filing returns using the EFIN assigned to The Jordan Taylor Group LLC. (*Id.*)

9. For at least five years, Irving Brown Sr. has been assisted in tax return preparation on an occasional basis by his son, Irving Brown II ("Brown II"). (Stipulation of Uncontested Facts ¶ 10.) For at least five years, Brown Sr. has been assisted in

tax return preparation by his daughter, Tuiana Brown. (*Id.* ¶ 11.)

10. Irving Brown, Sr., individually, and with the assistance of others including his son and his daughter, prepared over 1,600 federal income tax returns from 2011 (tax year 2010) through 2015 (tax year 2014). (Declaration of Peter Chlimon ¶ 33.) Brown Sr. charges most customers more than $400 for preparing a personal income tax return. (*Id.* ¶ 31.) According to records maintained by Brown, Sr., his business received nearly $600,000 in total tax preparation fees for tax years 2010, 2011, and 2012 alone. (*Id.*)

11. Irving Brown Sr. prepares returns that unlawfully understate his customers' tax liability by: fabricating or inflating deductions on Form 1040 Schedule A, "Itemized Deductions" and Form 1040 Schedule C, "Profit or Loss from Business"; and Schedule E "Supplemental Income or Loss"; improperly claiming head-of-household filing status on separate returns for married couples; and improperly claiming dependents and creating false business income to generate larger Earned Income Tax Credits for his customers. (*Id.* ¶¶ 41–52.)

12. As a direct result of Irving Brown Sr.'s fraudulent return preparation, his customers have filed federal income tax returns understating their federal income tax liabilities and claiming large income tax refunds to which they were not entitled.

The IRS Investigation

13. The investigation of Irving Brown Sr. was initiated by the Lead Development Center of the Internal Revenue Service. (*Id.* ¶ 6.) Brown Sr. was initially identified through the IRS e-file monitoring program in 2012. (*Id.*) The IRS monitors authorized IRS e-file providers for compliance with IRS procedures and e-file rules and requirements by visiting providers' offices.

(*Id.*) During the monitoring visits, the IRS ensures compliance with IRS e-file rules by reviewing the quality of IRS e-file submissions for rejects and other defects, checking adherence to signature requirements on returns, scrutinizing advertising material, examining records, and observing office procedures. (*Id.*)

14. As a result of the e-file monitoring visit, the IRS on March 12, 2012 determined that Irving Brown Sr. was in significant non-compliance with IRS regulations regarding the electronic filing of customers' tax returns. (*Id.* ¶ 7.) He was assessed civil penalties for his failure to abide by the rules of the IRS e-filing program. (*Id.*)

15. The IRS then opened a civil investigation into the tax preparation practices of Irving Brown, Sr. to determine whether he was submitting fraudulent and abusive tax returns on behalf of his customers. (*Id.* ¶ 7.)

16. On January 28, 2014, IRS Revenue Agent Peter Chlimon went to Irving Brown Sr.'s residence, 8521 South Eggleston Avenue, Chicago, Illinois, where he conducts his tax preparation business. (*Id.* ¶ 8.) The purpose of his visit was to hand-deliver an initial investigation package which notified Brown Sr. about the IRS civil investigation into his tax preparation practices and requested certain records as part of that investigation. (*Id.*)

17. On that date, Revenue Agent Chlimon spoke with a male who identified himself as Irving Brown Sr.'s brother. (*Id.* ¶ 9.) He denied that he was, in fact, Brown Sr., and stated that he did not know the whereabouts of Brown Sr. (*Id.*) Later that day, Revenue Agent Chlimon returned to Brown Sr.'s residence, and the same individual admitted that he was, in fact, Irving Brown, Sr. (*Id.*)

18. The IRS then conducted a civil investigation of the tax returns prepared by Irving Brown Sr. and/or prepared using the PTIN assigned to Irving Brown Sr.

Tax Services. During that investigation, the IRS examined 94 tax returns prepared by Brown Sr. or submitted under Brown Sr.'s PTIN for the tax years 2011, 2012, and 2013. (*Id.* ¶ 41.) IRS representatives also interviewed 15 taxpayers regarding tax returns prepared by Brown Sr. in 2013 for tax year 2012. (*Id.*) Of the 94 returns examined for these years, all but two returns required IRS adjustments. (*Id.* ¶ 42.) The total tax deficiency from the 94 tax returns examined totaled $741,166, with an average deficiency per tax return of $7,884.74. (*Id.* ¶ 53.) The IRS projects that the tax loss due to errors on tax returns prepared by Brown Sr. for tax years 2011, 2012, and 2013 is well in excess of $1 million. (*Id.*)

19. One of the returns that did not require an adjustment, that of customer Judy Riste, was not prepared correctly, but any adjustment would not have resulted in additional revenue to the IRS. (Declaration of Daniel Nowakowski (Pl.'s Ex. 3) ¶ 8.)

20. By January 2014, Irving Brown Sr. knew that the IRS was investigating his return-preparation conduct. (Declaration of Peter Chlimon ¶ 8.) Nevertheless, Brown Sr. continued to prepare federal income tax returns that understated his customers' income tax liabilities by inflating or fabricating Schedule C business expenses, reporting false and unrealistic charitable contributions and unreimbursed employee business expenses on Schedule A, and repeatedly misusing head of household filing status. (*See* Pl.'s Exs. 21, 30.)

21. Irving Brown Sr. failed to exercise reasonable diligence in requiring his customers to provide receipts and other documentary proof of the Schedule A charitable donations and unreimbursed employee business expenses and Schedule C sole proprietorship income and expenses listed on his customers' tax returns. (Declaration

of Priscilla Wright (Pl.'s Ex. 5) ¶¶ 3, 7, 8; Declaration of Katrena Dear (Pl.'s Ex. 8) ¶ 4; Declaration of Timothy Cox (Pl.'s Ex. 7); Declaration of Stephen Holmes (Pl.'s Ex. 8) at 2.)

22. Irving Brown Sr. also actively attempted to impede and obstruct the IRS investigation into his return preparation. When informed by customer Curtis Young, Jr. that the IRS was examining Young's tax return, which Brown, Sr. had prepared, Brown Sr. provided Young blank work orders and blank receipts and told him to fill out the receipts and work orders with false information and then give them to the IRS. (Declaration of Curtis Young (Pl.'s Ex. 4) ¶ 3.) After Young's meeting with the IRS for examination, Young called Irving Brown Sr. and told him that Young owed money to the IRS. (Id. ¶ 5.) Irving Brown Sr. told Young not to implicate him, and offered $3,000 to pay towards Young's tax liability if Young agreed not to turn Irving Brown Sr. in or sign an affidavit implicating him.

23. The false receipts and work orders submitted to the IRS by Young were identical or nearly identical to seemingly fraudulent receipts and work orders provided by three other customers of Brown Sr. (Declaration of Daniel Nowakowski ¶¶ 11–13, 18.) Some documents provided by these customers seemed to be written in the same handwriting, shared the same template, and appeared to be taken from the same receipt books. (Id. ¶ 11.) The only connection common to all four customers is the tax preparation by Irving Brown Sr., leading to the conclusion that Brown Sr. furnished false documents to multiple customers, with the intent that the customers present those documents to the IRS. (Declaration of Daniel Grieco (Pl.'s Ex. 2) ¶ 14.)

24. During the IRS's civil investigation into Irving Brown Sr.'s tax preparation practices, Revenue Agent Chlimon also reviewed the personal income tax returns of Brown Sr. for tax years 2010, 2011, and 2012. (Declaration of Peter Chlimon ¶ 55.) Brown Sr.'s self-prepared income tax returns for those years significantly underreported the gross receipts of Irving Brown Sr. Tax Services, reporting gross receipts far lower than the actual proceeds from Brown Sr.'s tax return preparation business. (Id. 55–61.)

25. After Revenue Agent Chlimon's investigatory visit, Irving Brown Sr. submitted amended tax returns reflecting greatly increased receipts and personal income tax liabilities. (Id.) The significant underreporting of his own Schedule C income indicates that the falsehoods in Schedule C forms Brown Sr. prepared for his customers are very unlikely to have been the product of Brown Sr.'s mistake or accident or the customers' misstatements to Brown Sr.

26. Irving Brown Sr. was engaged in tax preparation activities intended to significantly underreport the tax liabilities of his customers and, as a result, to obtain personal profit from preparing and filing fraudulent income tax returns by charging fees for his services.

27. Irving Brown Sr. willfully, intentionally, and recklessly understates his customers' income tax liabilities by repeatedly preparing returns that improperly contained fabricated or inflated deductions on Schedules A and C, reported an incorrect filing status for his customers, and improperly inflates income and/or claims ineligible dependents to generate larger Earned Income Tax Credits.

28. Many of the amounts Irving Brown Sr. reflected as his customers' charitable donations, unreimbursed employee expenses, and sole proprietorship revenue and expenses appeared to be exact and not estimated. The exactness of these reported expenses suggest that they were submitted by Brown Sr. to mislead the IRS that

they were based upon documented charitable donations, revenues, and expenses. (Declaration of Daniel Nowakowski ¶ 11.) For example, it is not likely that a customer estimating her business telephone expenses without documentary proof would report to Brown Sr. the exact amount of $1,296. (*See* Pl.'s Ex. 25 at 2106.) It is not reasonable that a customer would independently remember such an exact figure, or that a reasonably diligent tax preparer would believe that his customer had independent recollection of such an exact figure without documentary proof. (*See* Declaration of Katrena Dear (Pl.'s Ex. 6) ¶ 4.)

29. Irving Brown Sr. has repeatedly violated the Internal Revenue Code, continued illegal conduct even after he knew the IRS was investigating, and has refused to accept blame for preparing fraudulent returns. (*See* Pl.'s Exs. 21, 30 (tax returns containing false information prepared and submitted by Defendant after he had knowledge of the IRS investigation).)·

30. Irving Brown Sr. also has declined to make any offer of assurance against future violations or to recognize culpability for the false returns he prepared.

31. Irving Brown Sr.'s conduct shows a "high likelihood" that, absent an injunction, he will continue to prepare fraudulent returns and interfere with the IRS.

False or Inflated Schedule A Employee Business Expenses and Charitable Deductions

32. The tax returns prepared by Brown Sr. commonly include false Form 1040, Schedule A itemized deductions to offset customers' Form W–2 wage income. Schedule A is used by taxpayers who choose to itemize deductions rather than use the standard deduction from adjusted gross income. (Declaration of Peter Chlimon ¶ 46.)

33. Because charitable contributions and unreimbursed expenses are not independently reported to the government, un-

scrupulous tax preparers frequently use inflated Schedule A deductions to offset customers' earned income to fraudulently obtain a refund of income taxes previously withheld and paid to the IRS or a reduction in their tax liability. (*Id.* ¶ 47.)

34. Irving Brown Sr. routinely reports charitable contributions that are entirely fabricated, and he often creates false unreimbursed business expenses (particularly for uniform expenses and costs associated with job-related training and conference attendance). (*Id.* ¶ 46; *See also* Declaration of Stephen Holmes (Pl.'s Ex. 8) at 3.) Several customers did not provide any information about charitable contributions or business expenses to Brown Sr., and did not know that Brown claimed these deductions on their returns. (*See* Declaration of Stephen Holmes at 3.)

35. When Irving Brown Sr.'s customers have incurred valid deductible expenses, Brown Sr. still often included vastly greater charitable contributions and unreimbursed business expenses than can be justified or, in fact, ever existed. (*See* Declaration of Priscilla Wright ¶ 7.)

36. By creating false Schedule A deductions, Irving Brown Sr. is able to offset his customers' earned income to fraudulently obtain a refund of income taxes previously withheld and paid to the IRS or a reduction in their tax liability. (Declaration of Peter Chlimon ¶ 46.)

37. Irving Brown Sr. prepared and submitted to the IRS the 2012 and 2013 federal tax returns of customer Priscilla Wright. (Declaration of Priscilla Wright ¶ 2.) Brown Sr. created fake and inflated unreimbursed employee expenses of $10,987 in 2012, including $2,196 in uniforms, $1,520 in uniform cleaning, $2,980 in meals, and $3,296 in parking expenses. (Pl.'s Ex. 29 at 6087.) Priscilla Wright did not tell Brown Sr. that she had incurred such expenses, she never discussed any

unreimbursed business expenses with Brown Sr., she did not provide any documents to support the expenses that were reflected on Schedule A of her 2012 income tax return, and she did not incur the expenses that were listed by Brown Sr. (Declaration of Priscilla Wright ¶ 8.) In fact, Priscilla Wright did not have a car in 2012, and she did not drive to work or park any car at work during that year. (*Id.* ¶ 9.) Brown Sr. also falsely listed $2,150 in charitable contributions in tax year 2012. Priscilla Wright made charitable contributions in 2012, but not in the amount of $2,150. (Pl.'s Ex. 29 at 6079.) She did not tell Brown Sr. that she gave $2,150 in charitable contributions in tax year 2012, did not provide him any documents showing the amount of charitable contributions she made in that year, and the information included by Brown Sr. as charitable contributions on Schedule A of Priscilla Wright's 2012 income tax return is false. (Declaration of Priscilla Wright ¶ 7.)

38. Irving Brown Sr. prepared and submitted to the IRS the 2011 federal income tax returns of Rosalyn Berry. (Pl.'s Ex. 35 at 4.) Brown Sr. reported inflated unreimbursed employee business expenses on Berry's 2011 tax return. (*Id.* at 14–15.) While Berry had uniform cleaning expenses of roughly $300 during the 2011 tax year, Brown Sr. indicated on her return that those expenses were in excess of $1,000. Berry did not tell Brown Sr. she had uniform cleaning expenses in excess of $1,000 for the 2011 tax year, nor did she provide any documents supporting such expenses.

39. Irving Brown Sr. prepared and submitted to the IRS the 2011 and 2012 federal income tax returns of Stephen Holmes. (Declaration of Stephen Holmes at 1.) Brown Sr. reported inflated unreimbursed employee business expenses, including course attendance and certifications, and false charitable contributions.

Although Brown Sr. indicated on Holmes's 2012 income tax return that Holmes contributed $7,512 in cash charitable donations, Holmes made no cash contributions in tax year 2012. (Pl.'s Ex. 25 at 2684.) Holmes was not aware that the amount was listed on his income tax return until he was contacted by the Internal Revenue Service. (Declaration of Stephen Holmes at 2.) In 2011 and 2012, Holmes received some of the certifications and attended some of the classes and conferences reflected as attachments to Schedule A of his income tax returns; however, the unreimbursed expenses listed by Brown Sr.— $10,412 in 2011 and $11,474 in 2012—are much higher than the expenses he actually occurred. In fact, the City of Chicago reimbursed Holmes for most of the work-related costs he incurred during those tax years. (*Id.*)

40. Irving Brown Sr. prepared and submitted to the IRS the 2011 and 2012 income tax returns of Timothy Cox. (Declaration of Timothy Cox.) Brown Sr. included false Schedule A charitable contributions of $3,605 in 2011 and $6,980 in 2012, and false unreimbursed Schedule A employee expenses of $6,040 in 2011 and $9,512 in 2012. (*Id.*; *see* Pl.'s Ex. 31 at 1931–32; Pl.'s Ex. 32 at 1944–45.) Those false unreimbursed expenses included Uniform cleaning, EMT Certification, Hazmat certification, Con Ed Fire Training, EMT/1st Conference, MCI training, AED/CPR/Firstaid TR, and Fire Science training. (Pl.'s Ex. 31 at 1932; Pl's Ex. 32 at 1945.) Cox did not tell Brown Sr. of any such contributions and unreimbursed expenses, nor was he aware that these deductions were included on his tax returns. (Declaration of Timothy Cox.)

41. Irving Brown Sr. prepared and submitted to the IRS the 2011 and 2012 income tax returns of Lloyd Williams. (Tr. at 9; Pl.'s Ex. 27 at 3287; Pl.'s Ex. 28 at.)

Brown Sr. included $3,996 in gifts by cash or check and $350 in other gifts in tax year 2011. (Pl.'s Ex. 27 at 3289.) While Williams made some cash contributions in 2011, he did not give Brown Sr. any documentary evidence of the contributions made. (Tr. at 19.) Williams attended certain conferences and trainings in tax years 2011 and 2012, and had certain employee expenses such as uniform cleaning. (*Id.* at 19–23.) However, he did not incur the amount of unreimbursed employee expenses—$13,042 in 2011 and $8,111 in 2012—that are reflected on Schedule A for Williams's 2011 and 2012 tax returns, because the City of Chicago reimbursed Williams for conference and other work-related expenses. (*Id.*) Williams did not give Brown. Sr. any documentary evidence of these expenses. (*Id.* at 23.)

42. Irving Brown Sr. prepared and submitted to the 2012 and 2013 federal income tax returns of Andre Wright. (*Id.* at 238–39.) Andre Wright did not tell Irving Brown Sr. that he made the charitable contributions of $2,100 in gifts by cash or check and $485 in "other gifts" that Brown Sr. reported on Andre Wright's 2012 income tax return. (*Id.* at 245–46.) Andre Wright did not make any charitable contributions in 2012 and that information listed on Schedule A of Andre Wright's return is false. (*Id.*) Andre Wright also did not incur any unreimbursed employee business expenses in 2012. (*Id.* at 246–47.) He did not tell Brown Sr. that he had incurred any such expenses and never discussed them the false $12,171 in unreimbursed expenses listed on his 2012 income tax return. (*Id.* at 247.)

Inflated or False Schedule C and Schedule E Expenses

43. Irving Brown Sr. often prepares his customers' tax returns by including a fraudulent Schedule C, showing inflated or entirely fraudulent losses, in order to offset income on the taxpayer's Form 1040.

Schedule C is used by individual taxpayers to report income or loss from a sole proprietorship. (Declaration of Peter Chlimon ¶ 43.)

44. Irving Brown Sr. fabricates expenses incurred by his customers' purported businesses. In reality, the taxpayer owns no business, or, if he or she does own a business, most business-related expenses are concocted by Brown Sr.

45. By fraudulently inflating Schedule C expenses, the returns prepared by Irving Brown Sr. purport to show that his customers have business expenses that offset earned income and the customer is therefore entitled to reduced tax liability or a refund of income taxes previously withheld and paid to the IRS.

46. When his customers do not have enough earned income to generate income tax refunds through fabricated Schedule A and Schedule C deductions, Irving Brown Sr. has a different Schedule C scheme: fraudulently inflating his customers' Schedule C business income to show that the taxpayer is entitled to an earned income tax credit to which he or she is, in fact, not entitled.

47. The Earned Income Credit or Earned Income Tax Credit ("EITC"), established by 26 U.S.C. § 32, is a refundable tax credit for low to moderate-income working individuals and couples, particularly those with children. (Declaration of Peter Chlimon ¶ 48.) The amount of benefit depends on a recipient's income and number of children. (*Id.*) The EITC is not available to individuals who use the filing status of married filing separately. (*Id.*)

48. Because it is a refundable credit, claiming an EITC can reduce a taxpayer's tax liability below zero, resulting in a payment from the U.S. Treasury. (*Id.*) EITC fraud is a particularly pernicious form of fraud perpetrated by unscrupulous income

tax preparers. (*Id.*) This is because false EITC credits not only harm the United States Treasury, but also because the fraudulent use of EITC damages public confidence in a statutory credit meant to encourage low-income workers with young children to maintain employment. (*Id.*)

49. According to the Lead Development Center of the Internal Revenue Service, 71% of the 1,156 tax returns prepared by Irving Brown Sr. over a three year period included a Schedule C business. (*Id.* ¶ 45.) Of those returns reflecting a Schedule C business, 76% showed losses (used to offset income), while 24% were profitable. (*Id.*) Of those alleged businesses that were profitable, fully 94% of them were reported on returns in which the taxpayer claimed the Earned Income Tax Credit. (*Id.*) These numbers suggest a concerted and repeated effort to defraud the United States. (*Id.*)

50. In 2011, 2012, 2013, and 2014, Irving Brown Sr. submitted EITC claims for between 38% and 52% of individual returns. (*Id.* ¶ 49.) That prevalence of EITC claims is suspiciously high. (*Id.*) Also suggestive of pervasive fraud is that the EITC is claimed in 94% of cases where Brown Sr.'s customers report a profit on the Schedule C, according to the Lead Development Center. (*Id.*) Such a high prevalence of EITC claims corresponding to Schedule C profits suggests a concerted and improper effort to fabricate Schedule C income in order to qualify for tax credits. (*Id.*)

51. Irving Brown Sr. also has created false Form 1040, Schedule E expenses from rental real estate in order to create significant deductions to taxable income. (*Id.* ¶ 52.) Schedule E is used to report income or loss from rental real estate, royalties, partnerships, S corporations, estates, trusts, and residual interests in REMICs. (*Id.*)

52. Irving Brown Sr. included on Priscilla Wright's 2012 federal income tax return a Schedule C containing a home health business named "The Wright Way Care." (Pl.'s Ex. 29 at 6081.) Priscilla Wright did not tell Irving Brown Sr. or anyone else at Irving Brown Sr. Tax Services that she was self-employed or owned any business. (Declaration of Priscilla Wright ¶ 5.) She did not tell them that she owned or ran a business named "The Wright Way Care." (*Id.*) She was not self-employed in 2012. (*Id.*) She has never owned the business described on the Schedule C that was attached to her 2012 federal income tax return. (*Id.*) That business, including the $4,211 in gross business income and $16,545 in business expenses listed on Priscilla Wright's Schedule C for 2012, was completely fabricated by Irving Brown Sr. (*Id.* ¶ 6.)

53. Irving Brown Sr. prepared and submitted to the IRS the 2010, 2011, and 2012 federal income tax returns of Rosalyn Berry. (Tr. at 140.) Although Brown Sr. included a Schedule C on Berry's 2010 tax return for a business called "Berry Salon," (Pl.'s Ex. 34 at 9), Berry did not have any business in 2010, and did not tell Brown Sr. that she had a business called "Berry Salon" in 2010. (Tr. at 151.) In 2011 and 2012, Brown Sr. included a Schedule C called "Berry Construction" on Berry's tax returns. (Pl.'s Ex. 35 at 17; Pl.'s Ex. 36 at 11.) At no point in her life did Berry ever have a business, nor did she tell Brown Sr. she had a business. (*Id.* at 153.)

54. Stephen Holmes's 2011 and 2012 reflect a fake Schedule C business named "Contract Building Repair." (Pl.'s Ex. 22 at 2673; Pl.'s Ex. 23 at 2685.) Holmes did not tell Irving Brown Sr., or Irving Brown, II that he had a business called "Contract Building Repair," nor did he have a business called "Contract Building Repair." (Declaration of Stephen Holmes at 2.) He

did not have any business at all. (*Id.*) The business reflected on those Schedule C forms was completely fabricated by Irving Brown, Sr. Holmes was not aware that the business was listed on Schedule C of his 2011 or 2012 income tax returns until I was contacted by the Internal Revenue Service. (*Id.*) Holmes did not tell Irving Brown Sr. or Irving Brown II that he received $4,265 in gross income and incurred $20,717 in business expenses in 2011, nor did he tell anyone at Irving Brown Sr. Tax Services that he obtained $4,525 in gross income and incurred $10,139 in business expenses in 2012. (*Id.* at 2–3.) He did not receive this business income or incur these expenses in 2011 or 2012. (*Id.*) The information Irving Brown, Sr. included on the Schedule C forms is false. (*Id.*) Holmes was not aware these amounts were listed on Schedule C of his income tax returns for 2011 and 2012 until he was contacted by the Internal Revenue Service. (*Id.*)

55. The sole proprietorship income reflected on Timothy Cox's 2011 and 2012 income tax returns was placed on Schedule C by Irving Brown Sr. without his knowledge. (Pl.'s Ex. 31 at 1933; Pl.'s Ex. 32 at 1946.) Cox did not have a sole proprietorship in 2011 and 2012, so the expenses for advertising, contract labor, insurance, legal and professional services, and rent or other business equipment for "Cox House Decorating" were improperly placed on Cox's 2011 and 2012 federal tax returns by Brown Sr. to reduce his income tax liabilities. (Declaration of Timothy Cox.)

56. The 2011 and 2012 income tax returns prepared and transmitted by Irving Brown Sr. on behalf of Lloyd Williams contain a Schedule C for a business named "Williams Construction." (Pl.'s Ex. 27 at 3291; Pl.'s Ex. 28 at 3312.) Williams did not tell Irving Brown, Sr. that he had a business called "Williams Construction." (Tr. at 15, 17.) Although he did some

plumbing work as a side job, he did not have a business. (*Id.* at 15.) The business reflected on those Schedule C forms, "Williams Construction," was completely fabricated by Irving Brown, Sr. Accordingly, Williams did not tell Irving Brown, Sr. that he received $4,290 in gross income in 2011 and $6,523 in gross income in 2012, and incurred $22,199 in business expenses in 2011 and $22,727 in business expenses in 2012, nor did he receive this business income or incur these expenses in 2011 and 2012. (*Id.* at 15–17.) The information Irving Brown, Sr. included on the Schedule C forms is false. Williams also did not tell Irving Brown, Sr. that he maintained a rental property in tax year 2011. (*Id.* at 18.) The property shown on Schedule E of his 2011 tax return is not his property, and he did not own a rental property. (*Id.*) Williams did not receive $4,550 in income from a rental property or incur $21,902 in Schedule E expenses in tax year 2011. (*Id.*) The information Irving Brown, Sr. included on the Schedule E is false.

57. Andre Wright's 2012 and 2013 income tax returns, prepared by Irving Brown Sr., contain a Schedule C for a carpentry business named "AW Construction." (Pl.'s Ex. 20 at 5952; Pl.'s Ex. 21 at 5980.) Andre Wright did not tell Irving Brown, Sr. or anyone else at his tax preparation company that he was self-employed or that he owned any business. (Tr. at 238.) He did not tell them that he owned or ran a business named "AW Construction." (*Id.* at 245, 248.) He has never owned the business described on the Schedule C that was attached to his 2012 and 2013 federal income tax return. The business reflected on those Schedule C forms, "AW Construction," was completely fabricated by Irving Brown, Sr. Therefore, Andre Wright did not tell Irving Brown, Sr. that he received $3,296 in gross business income and incurred $19,458 in business expenses in 2012, or that he made $1,987 in

gross business income and incurred $6,035 in business expenses in 2013. He did not obtain this income or incur these expenses. The information Irving Brown, Sr. included on the 2012 Schedule C is false.

58. Katrena Dear's 2011 and 2012 income tax returns prepared by Irving Brown Sr. or Irving Brown Sr. Tax Services contain a Schedule C for a business named "Dear Sales Co." (Pl.'s Ex. 25 at 2104; Pl.'s Ex. 26 at 2113.) She did not tell Irving Brown Sr., or Irving Brown II, that she had a business called "Dear Sales Co.," nor did she have a business called "Dear Sales Co." (Declaration of Katrena Dear ¶ 6.) She did not have any business. (Id.) The sales business reflected on Schedule C of her 2011 and 2012 tax returns, including $20,681 in falsely-reported business expenses in 2011 and $19,313 in falsely-reported business expenses in 2012, was completely fabricated by Dear's tax preparer. (Id.) She was not aware that the business was listed on her 2011 or 2012 income tax returns until her IRS audit. (Id.)

Returns Claiming False or Improper Filing Status

59. To qualify for head of household filing status, a taxpayer must be unmarried or considered unmarried at the end of the year, have paid more than half the cost of keeping up a home for the tax year (either one's own home or the home of a qualifying parent), and, in most cases, have a qualifying person who lived in the home for more than half of the tax year, unless the qualifying person is a dependent parent. (Declaration of Peter Chlimon ¶ 50.) Taxpayers who qualify for the head of household filing status benefit from a higher standard deduction and lower tax rates compared to the single or married filing separately statuses. (Id.)

60. Irving Brown Sr.'s frequent submission of income tax returns claiming head of household status is quite suspicious, particularly given the corresponding incidence of false Schedule A, Schedule C, and EITC claims. (Id.)

61. According to the records provided to the IRS by Irving Brown Sr., the vast majority of tax returns that he prepared in tax years 2010, 2011, and 2012 reflect head of household filing status. (Id. ¶ 51.) For the 2010 tax year, 486 of the 635 tax returns (or 76%) Brown Sr. prepared and submitted contained the filing status of head of household. For the 2011 tax year, 397 of the 523 tax returns (or 75%) Brown Sr. prepared and submitted contained the filing status of head of household. (Id.) For the 2012 tax year, 366 of the 524 tax returns (or 69%) Brown Sr. prepared and submitted contained the filing status of head of household. (Id.)

62. Irving Brown Sr. listed Priscilla Wright's filing status as "head of household" for tax years 2012 and 2013. (Pl.'s Ex. 29 at 6062; Pl.'s Ex. 30 at 6090.) Brown Sr. listed Priscilla Wright's husband, Andre Wright, as "single" in 2012 and "head of household" in 2013. (Pl.'s Ex. 20 at 5941; Pl.'s Ex. 21 at 5959.) However, Andre and Priscilla Wright went together to Irving Brown Sr. Tax Services in 2013 to have their 2012 income taxes prepared. (Declaration of Priscilla Wright ¶ 3–4.) They were married when they went to see Irving Brown Sr. in 2013 and were married during both tax years 2012 and 2013 and lived together in the same residence. (Id. ¶ 4.) Neither Andre Wright nor Priscilla Wright instructed Irving Brown II to state that their filing statuses were "head of household" or "single." (Id.) The statuses used by Irving Brown Sr. on Andre Wright's and Priscilla Wright's 2012 and 2013 federal tax returns are false.

## Conclusions of Law

By a preponderance of evidence, we find:

1. Irving Brown, Sr. has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695 and has continually and repeatedly engaged in other fraudulent or deceptive conduct substantially interfering with the administration of the tax laws. Irving Brown Sr., individually and doing business as Irving Brown Sr. Tax Services, is a return preparer who understates customer liability based on unrealistic positions, or due to his willful, reckless, or intentional disregard of rules and regulations. He has continually and repeatedly prepared tax returns for others for compensation that contain deductions on Schedules A, C, and E, and filing statuses to which those customers were not otherwise entitled, when the preparer knew or should have known that the information reported on the returns he prepared for customers was unrealistic and without a reasonable basis. *See* 26 U.S.C. §§ 6694–95, 7407; *see also United States v. Dove*, No. 1:10-CV-0060, 2010 WL 11426136, at *1 (N.D. Ill. Apr. 16, 2010); *United States v. Powell*, No. 07 CV 489 MJR, 2007 WL 3232486, at *2–*5 (S.D. Ill. Nov. 1, 2007); *United States v. Reddy*, 500 F.Supp.2d 877, 882–84 (N.D. Ill. 2007); *United States v. Steverson*, No. 1:07-CV-1142-JBM, 2007 WL 2380011, at *4 (N.D. Ill. May 1, 2007); *United States v. Littrice*, No. 1:08-CV-2432, 2011 WL 3555812, at *3–*4 (N.D. Ill. 2011).

2. Irving Brown Sr. has engaged in conduct in violation of 26 U.S.C. § 6701. Irving Brown Sr., individually and doing business and Irving Brown Sr. Tax Services, has aided or assisted in, procured, or advised with respect to, the preparation of federal income tax returns, knowing that those returns and schedules will be used in connection with a material matter arising under the internal revenue laws and knowing that, if so used, such portion would result in an understatement of liability for the tax of his customers. Brown Sr. has prepared federal tax returns, Schedule A, Schedules C, and claims for charitable deductions that he knows or has reason to know will be used in connection the determination of his customers' tax liabilities, and that result in an understatement of those liabilities. Permanent injunctive relief pursuant to 26 U.S.C. § 7408 is appropriate to prevent the recurrence of that conduct. *See* 26 U.S.C. §§ 6701, 7408; *see also United States v. Kaun*, 827 F.2d 1144, 1148, 1150 (7th Cir. 1987); *Steverson*, 2007 WL 2380011, at *3.

3. The totality of the circumstances surrounding the defendant and his violations, including such factors as the gravity of the harm caused by the offense; the extent of the defendant's participation and his degree of scienter; the recurrent nature of the infractions and the likelihood that the defendant's customary business activities might again involve him in such transactions; the defendant's lack of recognition of his own culpability; and the sincerity of his assurances against future violations, establish that Irving Brown Sr. is reasonably likely to continue to violate the Internal Revenue Code if he is permitted to prepare tax returns for others. Brown Sr. deliberately attempted to impede the IRS civil investigation into his return preparation, including (initially) misrepresenting his identity to the IRS, providing false documents to his customers to present to the IRS during examinations, and improperly attempting to influence a customer to provide false statements to the IRS. The repeated nature of Brown Sr.'s violations established by the government, the continuation of his illegal conduct even after he learned of the IRS investigation into his tax preparation practices, his attempts to assist his customers in deceiving the IRS through the preparation of false receipts and invoices, his offer of cash payment to a customer if that customer declined to implicate Brown Sr. in wrongdoing, and Brown Sr.'s refusal to

accept blame for preparing fraudulent returns all establishes a "reasonable likelihood" of future violations. Brown Sr. has declined to make any offer of assurance against future violations or to recognize culpability for the false returns he prepared, showing a high likelihood that, absent a permanent injunction, he will continue to prepare fraudulent returns and interfere with the IRS. *See Kaun*, 827 F.2d at 1149–50 (quoting *S.E.C. v. Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982)); *see also United States v. Raymond*, 228 F.3d 804, 813 (7th Cir. 2000), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013); *Littrice*, 2011 WL 3555812, at *3; *Steverson*, 2007 WL 2380011, at *3–*4.

4. Irving Brown Sr. has continually and repeatedly engaged in conduct described in 26 U.S.C. § 7407(b)(1)(A)–(D), and an injunction prohibiting such conduct alone would not be sufficient to prevent Brown Sr.'s interference with the proper administration of the Internal Revenue Code. *See Powell*, 2007 WL 3232486, at *4.

5. Irving Brown Sr. has engaged in conduct that interferes with the enforcement of the internal revenue laws, and the United States and the public will suffer irreparable harm in the absence of a permanent injunction. The public interest will be served by granting a permanent injunction. The breadth and the gravity of Brown Sr.'s conduct establishes that it is necessary and appropriate that Irving Brown Sr. should be permanently enjoined from preparing income taxes for others under 26 U.S.C. § 7402(a). *See* 26 U.S.C. § 7402(a); *see also Littrice*, 2011 WL 3555812, at *3; *Dove*, 2010 WL 11426136, at *2; *Powell*, 2007 WL 3232486, at *5.

### Permanent Injunction

Based on the above findings of fact and conclusions of law, pursuant to 26 U.S.C. §§ 7402, 7407 and 7408, and in accord with Federal Rule of Civil Procedure 65(d), we hereby permanently enjoin Irving Brown Sr. (individually and doing business as Irving Brown Sr. Tax Services), his officers, agents, servants, employees, and attorneys, and anyone in active concert or participation with him or with them, from directly or indirectly:

1. Preparing or filing, or assisting in preparing or filing, any federal tax return, amended return, or other federal tax document or form for any person other than himself;

2. Representing any person before the IRS, or advising, assisting, counseling, or instructing anyone about preparing a federal tax return;

3. Having an ownership interest in an entity that is in the business of preparing federal tax returns or other federal tax documents or forms for other persons or representing any person before the IRS, or advising, assisting, counseling, or instructing anyone about preparing a federal tax return;

4. Engaging in conduct subject to penalty under 26 U.S.C. §§ 6694, 6695, or 6701;

5. Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

6. Employing any person who prepares or files, or assists in preparing or filing, any federal tax return, amended return, or other federal tax document or form for any person;

7. Advertising tax return preparation services through any medium, including the internet and social media; and,

8. Engaging in other conduct that substantially interferes with the proper

administration and enforcement of the internal revenue laws.

The United States may engage in post-judgment discovery to ensure compliance with this Order. Finally, we retain jurisdiction over Irving Brown Sr. and over this action to implement and enforce this Order. It is so ordered.